Kevin D Turnage
1003 E Pinto Ct
Gilbert, AZ 85296-3021
901-220-8664
kdturnage@protonmail.com
Pro Se Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Kevin D Turnage,

Plaintiff,

v.

**ROBERT F. KENNEDY, JR,** Secretary, U.S. Department of Health and Human Services, in his official capacity,

Defendant.

Case No.: CV-25-03367-PHX-SMB

**SUPPLEMENTAL AND FIFTH AMENDED COMPLAINT**
**(Jury Trial Demanded)**

Plaintiff Kevin D. Turnage alleges as follows:

## INTRODUCTION

1. This is a federal-sector employment retaliation action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.

2. Plaintiff opposed what he reasonably believed to be sex-based harassment and related unlawful conduct by a senior supervisor, escalated those complaints to agency leadership and headquarters, and then filed a formal EEO complaint.

3. Shortly after Plaintiff's protected activity, agency officials placed him on administrative leave, required him to surrender government property, escorted him from the facility by security, removed his system access, reassigned him to a 120-day detail, and then subjected him to additional unfavorable conditions.

4. The agency's stated justification for the March 21, 2023 removal was contradicted by the only identified witness, who stated that she did not hear the alleged threat and that a

drafted statement did not accurately reflect what she had said or witnessed.

5. After Plaintiff continued prosecuting this action, Defendant issued a Notice of Proposed Removal dated April 23, 2026, seeking to remove Plaintiff from federal employment.

6. Plaintiff brings one claim only: retaliation in violation of Title VII.

## JURISDICTION, VENUE, AND EXHAUSTION

7. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-16.

8. Venue is proper in the District of Arizona under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(e) because the employment practices alleged herein occurred in this District, Plaintiff worked in this District, and the relevant employment records were maintained and administered in this District.

9. Plaintiff is a federal employee who timely pursued administrative remedies.

10. Plaintiff initiated protected internal complaints in March 2023 concerning what he reasonably believed to be sex-based harassment and retaliation.

11. On April 13, 2023, Plaintiff filed a formal EEO complaint, Agency No. HHS-IHS-0296-2023.

12. Plaintiff appealed the agency's disposition to the Equal Employment Opportunity Commission, Office of Federal Operations, in Appeal No. 2024004239.

13. On September 2, 2025, the EEOC issued its decision on Plaintiff's appeal.

14. Plaintiff timely commenced this civil action within the statutory filing period.

## PARTIES

15. Plaintiff Kevin D. Turnage is a citizen and resident of Gilbert, Arizona.

16. At all relevant times, Plaintiff was employed by the Indian Health Service at Phoenix Indian Medical Center ("PIMC"). During the principal events alleged here, Plaintiff served as a Supervisory Clinical Nurse.

17. Defendant Robert F. Kennedy, Jr. is the Secretary of the United States Department of Health and Human Services and is sued only in his official capacity.

18. Under 42 U.S.C. § 2000e-16(c), the head of the department or agency is the proper defendant in this action.

## FACTUAL ALLEGATIONS

19. Plaintiff has been a federal employee since January 18, 2011.

20. Plaintiff accepted the GS-0610-12 Supervisory Clinical Nurse position at PIMC on or about March 28, 2022.

21. Beginning in 2022, Plaintiff experienced and reported workplace conflict involving employee Tonie Greve.

22. On or about December 19, 2022, Plaintiff filed a hostile-work-environment complaint against Ms. Greve.

23. On March 21, 2023, Plaintiff sent an escalation email to agency leadership and headquarters stating that the agency had failed to stop the hostile environment, that no individuals had contacted him regarding his complaints, and that the agency had failed to follow applicable guidance.

24. In November 2022, Chief Nursing Officer Candace Lee hugged Plaintiff in his office.

25. In the administrative record, Ms. Lee admitted that the hug occurred and admitted that she later acknowledged the hug in a Christmas card.

26. Plaintiff later objected to that conduct and complained that it was unwelcome and improper.

27. By March 3 and March 6, 2023, Plaintiff had made written complaints regarding Ms. Lee's conduct and related retaliation concerns.

28. PIMC Chief Executive Officer Debra Ward Lund was aware of those complaints because she was copied on the March 3 and March 6 emails, and the March 6 transmission included the image of the Christmas card.

29. According to Ward Lund's own affidavit in the ROI, after receiving Plaintiff's March 3, 2023 email, she immediately went to Ms. Lee's office, asked Lee about the complaint, remained present while Lee read the email for the first time, observed Lee become upset and tearful, and granted Lee leave for the rest of the day.

30. Ward Lund's immediate disclosure of Plaintiff's complaint to Ms. Lee before any neutral inquiry, together with her immediate intervention on Ms. Lee's behalf,

undermined the confidentiality and neutrality expected in the handling of harassment complaints.

31. On March 6, 2023, Plaintiff made a formal protected complaint concerning what he reasonably believed to be sex-based harassment and related retaliatory conduct by Ms. Lee.

32. During the same general period, management delayed processing Plaintiff's FMLA paperwork.

33. Plaintiff transmitted requested FMLA forms by late January and again on February 7, 2023.

34. On March 1, 2023, Plaintiff objected in writing that the FMLA request was well past the legal timeline and that the delay could constitute interference with, restraint of, or denial of FMLA rights.

35. The request was later approved in April 2023.

36. On March 21, 2023, Plaintiff again engaged in protected activity by escalating his complaints to PIMC leadership, IHS headquarters officials, and other officials.

37. On April 13, 2023, Plaintiff engaged in further protected activity by filing his formal EEO complaint.

38. On March 21, 2023, approximately 2 hours and 41 minutes after Plaintiff escalated his complaints by email, agency officials placed Plaintiff on administrative leave.

39. Plaintiff was directed to report in with government property, his government property was taken, he was escorted from the facility by security, and his access to government sites and systems was removed.

40. Plaintiff was not provided equivalent consideration. Instead, shortly after Plaintiff escalated his complaints to headquarters on March 21, 2023, management removed Plaintiff from the workplace, took his property, deactivated his access, and escorted him from the facility by security.

41. Defendant later reassigned Plaintiff and placed him on a 120-day detail in or about April 2023.

42. Upon reassignment, Plaintiff was subjected to additional unfavorable conditions, including lack of normal access and placement in an undesirable location.

43. The agency justified the March 21, 2023 action by claiming Plaintiff had made a threat involving Ms. Greve.

44. Brandi Benjamin attributed the alleged threat to Plaintiff and represented that Ashley Krumenacker heard it.

45. Ms. Krumenacker stated that she did not hear the alleged comment in question.

46. Ms. Krumenacker also stated that Jason White wanted her to sign a statement that did not reflect what she had told him.

47. In a March 22, 2023 email, Ms. Krumenacker stated that the drafted statement did not accurately reflect their conversation or what she witnessed, and she stated that she did not recall Plaintiff making a threat of violence.

48. The only identified witness therefore did not corroborate the accusation used to justify Plaintiff's immediate removal.

49. The agency nonetheless removed Plaintiff immediately, confiscated his property and access, and forced him from the premises.

50. The administrative record also reflects that management viewed the work environment involving Plaintiff, Ms. Lee, and Ms. Greve as unworkable.

51. Management also knew there had been ongoing conflict involving Ms. Greve and knew that Plaintiff had previously complained about that environment.

52. Despite that history, management acted immediately against Plaintiff based on an accusation that the only identified witness did not confirm.

53. Defendant's stated reason for the March 21, 2023 action was false or, at minimum, unworthy of credence.

54. The extreme temporal proximity between Plaintiff's March 21, 2023 protected escalation and the adverse actions approximately 2 hours and 41 minutes later, together with the contradictions in the agency's stated rationale, plausibly show retaliatory motive.

55. Defendant's actions would dissuade a reasonable employee from opposing discrimination or pursuing EEO relief.

56. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered humiliation, emotional distress, reputational harm, disruption to his employment, and other compensable injury.

## SUPPLEMENTAL FACTUAL ALLEGATIONS REGARDING APRIL 23, 2026 NOTICE OF PROPOSED REMOVAL

57. On April 10, 2026, Plaintiff filed a Motion for Leave to File Revised Fourth Amended Complaint, docketed as Doc. 68.

58. After Doc. 68 was filed, Defendant issued a Notice of Proposed Removal dated April 23, 2026.

59. The Notice of Proposed Removal seeks to remove Plaintiff from federal employment.

60. The Notice of Proposed Removal was issued through Proposing Official Staci R. Payne.

61. The Deciding Official identified for the proposed removal is Mark Downing.

62. The Notice of Proposed Removal asserts six charges against Plaintiff.

63. Plaintiff denies the charges and alleges that the Notice of Proposed Removal is retaliatory, pretextual, and part of the same ongoing course of retaliation alleged in this action.

64. The Notice of Proposed Removal was issued after Plaintiff filed this federal-sector Title VII action and after Plaintiff continued to engage in protected litigation activity, including filing pleadings and motions in this case.

65. Defendant knew of Plaintiff's protected EEO activity and litigation activity when the Notice of Proposed Removal was issued.

66. The Notice of Proposed Removal is materially adverse because it threatens termination of Plaintiff's federal employment, pay, benefits, professional reputation, and career.

67. The Notice of Proposed Removal would dissuade a reasonable employee from making or supporting a charge of discrimination or continuing to pursue protected EEO activity.

68. The Notice of Proposed Removal is causally connected to Plaintiff's protected activity based on temporal proximity, the ongoing pattern of alleged retaliation, and the relationship between the proposed removal charges and Plaintiff's protected activity.

69. Plaintiff alleges that the Notice of Proposed Removal was issued, in part, because he

objected to directives that he reasonably believed were retaliatory, improper, or would require him to participate in conduct inconsistent with his protected EEO activity and compliance obligations.

70. Plaintiff alleges that the proposed removal is not an isolated event but a continuation and escalation of the retaliatory course of conduct already alleged in this litigation.

71. Plaintiff further alleges that Defendant's stated reasons for the proposed removal are pretextual.

72. Plaintiff alleges that the Notice of Proposed Removal caused and continues to cause emotional distress, reputational injury, professional harm, financial uncertainty, disruption to employment, and other compensable injury.

## COUNT I
## TITLE VII RETALIATION
42 U.S.C. § 2000e-16

73. Plaintiff realleges paragraphs 1 through 72.

74. Plaintiff engaged in protected activity by opposing what he reasonably believed to be unlawful sex-based harassment, retaliation, and related unlawful employment practices; escalating those complaints to agency leadership and headquarters; filing a formal EEO complaint; pursuing administrative EEO remedies; prosecuting this federal-sector Title VII action; and objecting to directives that Plaintiff reasonably believed were retaliatory or required him to participate in conduct connected to unlawful retaliation.

75. Defendant, acting through agency management officials, knew of Plaintiff's protected activity.

76. Defendant thereafter subjected Plaintiff to materially adverse actions, including delayed handling of his FMLA request during the same retaliatory period, placement on administrative leave, surrender of government property, security escort, removal of system access, reassignment to a 120-day detail, unfavorable post-reassignment conditions, and the April 23, 2026 Notice of Proposed Removal.

77. The temporal proximity between Plaintiff's protected activity and the adverse actions, including the approximately 2 hour and 41 minute gap between Plaintiff's March 21, 2023 escalation email and his removal, together with the lack of corroboration for the agency's stated threat rationale and the contradictions supplied by the only identified witness, support a plausible inference of retaliatory causation.

78. The Notice of Proposed Removal further supports a plausible inference of retaliation

because it occurred during the pendency of this litigation, after Plaintiff continued to engage in protected EEO litigation activity, after Plaintiff objected to directives he reasonably believed were retaliatory or improper, and as an escalation of the same alleged retaliatory course of conduct.

79. Defendant's stated reasons for the Notice of Proposed Removal are pretextual.

80. Defendant retaliated against Plaintiff because of his protected activity.

81. Defendant's conduct violated Title VII, 42 U.S.C. § 2000e-16.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and grant the following relief:

A. Declare that Defendant violated Title VII as alleged herein;

B. Award all equitable and make-whole relief authorized by law;

C. Award compensatory damages as permitted by law;

D. Award Plaintiff his taxable costs;

E. Award appropriate prospective relief to prevent further retaliation to the extent permitted by law; and

F. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

DATED this 6th day of October, 2026.

Respectfully submitted,

/s/ Kevin D. Turnage
Kevin D. Turnage
Plaintiff Pro Se
1003 E. Pinto Ct.
Gilbert, AZ 85296-3021
901-220-8664

kdturnage@protonmail.com